[Cite as *State v. Gay*, 2019-Ohio-3389.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27949 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1089 |
| | : | |
| MARVIN ANTHONY GAY, SR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of August, 2019.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

S. TODD BRECOUNT, Atty. Reg. No. 0065276, 115 North Main Street, Suite A, Urbana, Ohio 43078
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Following a no contest plea, Appellant, Marvin Gay, Sr., was found guilty of failure to comply with an order or signal of a police officer, and he was sentenced to a term of community control sanctions (CCS). Appellate counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating he could not find any arguably meritorious appellate issues. We agree with this conclusion. As such, the trial court's judgment will be affirmed.

## Facts and Procedural History

{¶ 2} Gay was indicted for failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B),(C)(5), a third-degree felony, and tampering with evidence in violation of R.C. 2921.12(A)(1), also a third-degree felony. Gay filed a motion to suppress, which was overruled. Following this, Gay and the State entered into a plea agreement. The agreement provided that Gay would enter a no contest plea to the failure to comply count, and the tampering count would be dismissed. The agreement further provided that Gay would be sentenced to a term of CCS, that the alternate sentence upon a CCS revocation would be 18 months, and that Gay's bond would be modified so that he would be released from the Montgomery County Jail pending completion of a presentence investigation (PSI). Following receipt of the PSI, Gay was so released, and the trial court sentenced Gay to CCS with the alternate sentence being 18 months.

{¶ 3} Gay's original appellate counsel also filed an *Anders* brief, but this brief was rejected, and new counsel appointed, because the appellate record did not include a

transcript of the suppression hearing. Current counsel has supplemented the record with the suppression hearing transcript. Current counsel then filed the noted *Anders* brief, and he also requested leave to withdraw as Gay's attorney. Gay was informed of the *Anders* brief and of his right to file a pro se brief within 60 days of the *Anders* notice. Gay has not filed a brief.

## *Anders* Standard

{¶ 4} An appellate court, upon the filing of an *Anders* brief, has a duty to determine, "after a full examination of the proceedings," whether the appeal is, in fact, "wholly frivolous." *Anders*, 386 U.S. at 744, 87 S.Ct. 1396, 18 L.Ed.2d 493; *Penson v. Ohio*, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988). An issue is not frivolous based upon a conclusion that the State has a strong responsive argument. *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4. A frivolous issue, instead, is one about which, "on the facts and law involved, no responsible contention can be made that offers a basis for reversal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. If we find that any issue is not wholly frivolous, we must reject the *Anders* brief and appoint new counsel to represent the defendant.

## *Anders* Analysis

{¶ 5} Consistent with his duty under *Anders*, counsel has articulated two potential assignments of error: (1) that the trial court erred in overruling Gay's motion to suppress, and (2) that the plea hearing did not conform to the Crim.R. 11 requirements.

**Motion to Suppress**

{¶ 6} Gay's motion to suppress asserted that the stop of his vehicle was illegal and following the stop, he made statements subject to suppression. Moraine Police Officer William Olinger testified at the suppression hearing that his cruiser was parked so that he could observe the parking lot of the Knights Inn located on Dryden Road. While so positioned, Olinger observed an automobile enter the Knights Inn parking lot. This vehicle was driven by Gay. Gay, left the engine running, exited the vehicle, walked to a motel room door, and, it appeared to Olinger, had a brief encounter with the room's occupant. Gay returned to his vehicle and exited the Knights Inn parking lot onto northbound Dryden Road.

{¶ 7} Olinger, suspecting that a drug transaction had occurred, decided to follow Gay's vehicle. After positioning his cruiser behind Gay's vehicle, Olinger noticed that the vehicle's rear license plate light was not emitting sufficient illumination so that the license plate was visible within 50 feet. This, Olinger concluded, was a violation of R.C. 4513.05(A) which, at night, requires a vehicle's rear license plate be illuminated with a white light so that the plate is visible "from a distance of fifty feet to the rear." Through pacing using the cruiser's speedometer, Olinger also concluded that Gay was travelling approximately 55 miles per hour when the posted speed limit was 40 miles per hour. Olinger, based upon these observations, decided to perform a traffic stop.

{¶ 8} Using the cruiser's overhead lights, Olinger initiated the stop. Gay, at least initially, appeared to comply with the command by pulling his vehicle to the side of the road and stopping. But before Olinger exited his cruiser, Gay pulled away, causing Olinger to begin pursuit. After a short chase, with the vehicles moving from Moraine into

Dayton, Gay lost control of his vehicle, striking a utility pole.

{¶ 9} Following the collision, Olinger held Gay at gunpoint to await assistance, with such assistance coming from Dayton police officers.   A Dayton officer removed Gay from his vehicle and placed him in the backseat of Olinger's cruiser.   Soon thereafter, Olinger observed that Gay was chewing something.   Upon closer inspection, Olinger saw that Gay "had [white] residue all over his mouth."   Gay was placed upon the ground and was ordered to spit out whatever he was chewing.   Gay refused, but upon non-*Mirandized* questioning from Olinger, he stated that the substance in his mouth was crack cocaine. Olinger explained that he asked this question out of concern that Gay had ingested a harmful substance that might require immediate medical attention.   Gay finally swallowed the cocaine.

{¶ 10} At this point, Olinger administered *Miranda* warnings to Gay.   Gay indicated his understanding of each warning, and he verbally waived his *Miranda* rights. Gay confirmed he had purchased the cocaine from an individual at the Knights Inn.

{¶ 11} Gay presented the testimony of Candy Luckett.   Luckett, Gay's girlfriend, testified that on the same day as the events at issue she had the lights of Gay's vehicle repaired.   She presented a receipt, introduced as Exhibit B, which reflected that the vehicle's headlights had been repaired.   The receipt did not relate to the vehicle's rear license plate light, and Luckett admitted she did not know the working condition of the rear license plate light.

{¶ 12} The trial court, several days after the suppression hearing, orally announced its factual and legal conclusions.   The trial court found Olinger's testimony credible and concluded that the stop was supported by probable cause that Gay was speeding and

that the rear license plate light was not illuminated as statutorily required. The trial court further noted that neither Luckett's testimony nor Exhibit B spoke to the working condition of the rear license plate light. The trial court also ruled that Olinger's failure to give *Miranda* warnings before asking Gay what was in his mouth was sanctioned by the "exigent situation" created by concern for Gay's health. Based upon these findings, the court orally overruled the motion to suppress. Soon thereafter, the trial court filed an entry which incorporated the orally-announced factual and legal conclusions and reiterated its decision overruling the suppression motion.

{¶ 13} It is first noted that Gay's statements related to the dismissed charge of tampering with evidence. The statements, as such, are not an issue on appeal. Turning then to the stop, an officer's stop of a vehicle that is supported by probable cause of a traffic or equipment violation is reasonable, and thus not a Fourth Amendment violation, irrespective of the officer's ulterior investigative motives. *United States v. Whren*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). Given this and in light of the trial court's credibility determination regarding Olinger's testimony, any argument that the stop violated the Fourth Amendment would be frivolous.

## Crim.R. 11

{¶ 14} Counsel also suggests a possible appellate argument regarding the trial court's compliance with Crim.R. 11 when accepting Gay's no contest plea. Our review reveals that the trial court strictly complied with the constitutional and non-constitutional plea requirements. Any argument to the contrary would be frivolous.

**Additional Review**

{¶ 15} We have also reviewed the entire appellate record. This review includes the sentencing transcript, the plea and sentencing entries, and the PSI. This review has not revealed any potentially meritorious appellate issues.

**Conclusion**

{¶ 16} Having found no non-frivolous appellate issues, counsel is granted permission to withdraw, and the judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and FROELICH, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
S. Todd Brecount
Marvin Anthony Gay, Sr.
Hon. Michael W. Krumholtz